## FERGUSON v. RHOADES DRILLING CO.
### (No. 2449.)

(Court of Civil Appeals of Texas. Amarillo. March 25, 1925.)

1. **Mines and minerals** ⊗109—**Petition for balance due for drilling oil well held not subject to general demurrer.**

   Petition, alleging that account was due for drilling oil well and that defendant was due certain proportional assessments, and referring to attached exhibit containing itemized account, *held* not subject to general demurrer as not clearly and definitely setting out cause of action; how and why assessments were made being discoverable by special exception to petition.

2. **Pleading** ⊗34(3)—**Petition liberally construed on general demurrer.**

   In passing on general demurrer, petition must be liberally construed, giving effect to every reasonable intendment.

3. **Pleading** ⊗311—**Petition aided by statements and allegations of account on which founded.**

   Account on which petition is founded is part of petition, which is aided by statements and allegations of account.

4. **Appeal and error** ⊗232(1)—**Objection not made at time to submission of two issues together not considered on appeal.**

   Submission of two issues together cannot be considered on appeal, where not objected to on such ground at time.

5. **Mines and minerals** ⊗99(3)—**Drilling of oil well beyond contractual depth by agreement with one partner held not partnership matter establishing express contract binding on copartner.**

   Drilling of oil well, beyond depth agreed to by lease owners, under subsequent agreement with one of them conditioned on others agreeing to pay their parts of additional cost, *held* not partnership matter, and, though another owner paid part of claim and knew of application of payment and its purposes, there could be no recovery against him under petition alleging express contract and not pleading part payment by way of estoppel or recognition of contract.

6. **Contracts** ⊗346(4½)—**Proof of implied contract inadmissible to support allegation of express contract.**

   Proof of implied contract is inadmissible to support allegation of express contract.

7. **Mines and minerals** ⊗99(1)—**One member of mining partnership has no authority to bind another.**

   One member of mining partnership has no authority to bind another.

Appeal from Young County Court; W. H. Reeves, Judge.

Action by the Rhoades Drilling Company, a copartnership, against J. B. Ferguson.

⊗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Fred T. Arnold, of Graham, and Underwood, Hamilton & Johnson, of Amarillo, for appellant.

Elmer Graham, of Graham, for appellee.

RANDOLPH, J. This suit was filed in the county court of Young county by the Rhoades Drilling Company, a copartnership, against J. B. Ferguson, as defendant.

Plaintiff sues on a verbal contract of hire for the deepening of a certain oil well in Young county by them, in which well J. B. Ferguson had an interest, and alleges that defendant is indebted to them for work done under such contract in the sum of $415.10, being for a balance unpaid on said contract.

Defendant answered by general demurrer and general denial. The case was tried before a jury which considered special issues, and on their answers judgment was rendered for the plaintiff in the sum of $380.09.

[1] Appellant complains of the action of the trial court in overruling a general demurrer to plaintiffs' petition for the reasons that the petition does not clearly and definitely set out their cause of action, and that such deficiency in pleading is not cured by reference to an attached exhibit.

Plaintiff's petition, omitting the formal parts, is as follows:

"That heretofore, to wit, on the 13th day of January, 1923, the plaintiff, under a verbal contract of hire with the defendant, performed labor and work for the defendant in the drilling of the Briar Bend Well in Young county, Tex. That the defendant is due plaintiff for said work and labor as follows:

| | | | |
|---|---|---|---|
| Assessment No. 3 | 1/32 interest | $249 | 20 |
| | 1/128 interest | 62 | 30 |
| Assessment No. 4 | 1/32 interest | 332 | 08 |
| | 1/128 interest | 83 | 02 |
| | | $726 | 60 |

"That there has been paid on the above assessments $311.50, leaving a balance due to date to plaintiff of $415.10.

"That said account is past due and unpaid, and defendant, though often requested, has failed and refused, and still fails and refuses, to pay same, to plaintiff's damage in the sum of $415.10. That account is hereto attached and marked 'Exhibit A' and made a part hereof."

To this petition was attached an itemized account setting forth items in detail.

This petition and exhibit clearly set out a cause of action against the defendant. The allegation that the account was due for work and labor done in the drilling of the Briar Bend Well, and that the defendant is due certain proportional assessments for such work and labor, notifies the defendant that plaintiff was depending upon such proportional assessments. If the defendant had been curious to know how the assessments were made and why they were made, he could have discovered same by specially excepting to the petition on that ground, and thus compelled the plaintiff to amend and set out the nature of such assessments. That the petition was not subject to general demurrer, see Slade v. Patton (Tex. Civ. App.) 24 S. W. 845; Branch v. State, 25 Tex. 423; Oliver v. Chapman, 15 Tex. 400; Wells v. Fairbank, 5 Tex. 582.

[2, 3] In passing upon a general demurrer, the petition must be liberally construed, giving effect to every reasonable intendment. Higby v. Kirksey (Tex. Civ. App.) 163 S. W. 315. The plaintiff's petition being founded upon the account, it becomes a part of the petition, and its statements and allegations are held to aid such petition. Beham v. Ghio, 75 Tex. 89, 12 S. W. 996; Milliken v. Callahan County, 69 Tex. 205, 6 S. W. 681; Williams v. McNeil, 5 Tex. 381, 382.

[4] The plaintiffs declared upon an express verbal contract of hire. The trial court submitted the following issue to the jury:

"Did J. B. Ferguson, expressly or impliedly, contract with Rhoades Drilling Company for the deepening of said well past the 3,600-foot depth? Answer yes or no."

The jury answered this, "Yes."

The defendant, in due time and in the proper manner, objected to the submission of this issue for the reason that the plaintiff having declared upon an express contract, it was error for the court to submit any issue upon the issue of implied contract, and the court having admitted evidence to establish an implied contract, this is also assigned as error.

Appellant, in his brief, calls our attention to the fact that there are two issues thus submitted together. We cannot consider this last objection, because the issue was not objected to upon that ground. But the other question having been properly excepted to, we hold that the trial court erred in the submission of same and the admission of evidence upon that issue.

[5] The facts show that the Rhoades Drilling Company entered into an agreement to drill an oil well with a group of men who were owners of an oil lease, among whom were J. B. Ferguson, E. C. Reed, and J. G. Wooten. The original contract called for the well to be drilled to a depth of 2,700 feet unless oil was found sooner, and the drilling company was to get six-sevenths of the oil produced on the gas lease and pay all expenses of the drilling to that depth. No production was had at that depth and the interest holders, with the exception of J. G. Wooten and defendant Ferguson, held a meeting in the office of E. C. Reed to discuss the matter. It was then decided that the pay sand might be found at a depth of 3,000 feet or 3,600 feet, and all of them who were present felt that the well should be

drilled deeper. The Rhoades Drilling Company did not want to drill it deeper at their own expense, and the question came up about the other holders paying their pro rata part of the cost. This was estimated by Rhoades to be about $6,000, and he stated he would do the work for $125 per day, and pay his part of that amount, and complete the well in 90 days. This agreement was carried out, the well drilled to the depth of 3,600 feet, and all parties, that is, Ferguson and Reed, paid their pro rata part. This suit is based upon a continuance of the drilling beyond the 3,600-foot depth.

No production was had at 3,600 feet, and Rhoades went to see Mr. Reed, and Reed agreed for him to go on deeper, trying to go to 4,000 feet. Nobody was present at this conference but Reed and Rhoades. As soon as they began to drill to deepen the well from the 3,600 feet, they began to have trouble and lost some tools and had a fishing job on hand that lasted a long time. This requiring money, the expense began to run up fast, and Rhoades began to call on the others interested for their part of the expense money. This expense is represented by assessments No. 4 and part of No. 3 as made by Rhoades. Assessment No. 3 was made for the sum of $311.50, and assessment No. 4 was for the sum of $415.10. Defendant Ferguson paid $311.50 on the third assessment on January 13, 1923, at which time the well was 3,800 feet deep.

Rhoades testifies that he wrote at this time to Ferguson, and that Ferguson sent him the $311.50. In his reply, Ferguson complained of the cost of the well and said that he did not think the prospects justified the expense, but for Rhoades to do the best he could.

E. C. Reed testified that Ferguson resided in San Bernardino, Cal.; that he (Reed) did not represent Ferguson; and that Ferguson had no one at the meeting described above to represent him, when it was agreed to go to the 3,600-foot depth. The deepening of the well to 3,600 feet, as stated above, was paid for, and the questions which we shall consider arise on the drilling beyond that depth.

Rhoades then went to Reed and said he wanted to go down with the well, and Reed told him that he would do what the others would do and that he would pay his part of the costs. Rhoades then went on with the well and got in trouble, etc.

From this evidence, a partnership may be inferred in the drilling of the well to a depth of 2,700 feet, and all matters were thereafter settled up to the 3,600-foot depth, leaving the sum of $415.10 unpaid.

The plaintiff declares upon an express contract for the remainder of the work done. The evidence introduced establishes, if any, an implied contract which was partially recognized by defendant Ferguson's paying a part of bill for the work done. The work done, the deepening of the well beyond the 3,600-foot depth, cannot be held to be a partnership matter and thus made to establish an express contract. Reed, it is true, was a member of the partnership that agreed to the drilling of the well to the 2,700-foot depth, and later agreed to the 3,600-foot depth, and later agreed to the continuance of the drilling of the well to a possible 4,000-foot depth. This cannot be held to be a partnership matter and thus be made to establish an express contract, for Reed says he made this last agreement as an individual if the other members would agree to it and pay their part. Again, no express contractual consideration was agreed to between Rhoades and Reed on the deepening of the well beyond the 3,600-foot depth, but the amount to be paid rests on an implied promise to pay for the work done. What was to be the consideration for the deepening of the well? Was it to be based on a reasonable compensation for work and labor performed, or was it to be based on the contract for $125 per day, under which the well was deepened from 2,700 feet to 3,600 feet? There are no pleadings to properly present any feature of this new condition to the jury. In the case of Pagenkopf v. Phelps, 253 S. W. 622, Judge Boyce, for this court, holds that where defects in the performance are waived by acceptance with knowledge of the defects, this will impose a duty to pay for it. But that case involves no question of proper or necessary pleading. The fact that Ferguson may have paid on the bill rendered a part of what was claimed, might bind him, under proper pleadings, to recognition of his status as a party to the contract, he having knowledge as to the application of such payment and the purposes of same; but this act on his part would not supply the lack of pleading of the facts so binding him, and would not relate back and establish an express contract. The plaintiff certainly would have to plead such part payment by way of estoppel by acceptance or by way of recognition of the contract.

[6] Where the plaintiff pleads an express contract, proof of an implied contract is not admissible to support such allegation of express contract. This rule is founded upon the elementary principal that the allegata and probata must correspond. Shiner v. Abbey, 77 Tex. 1, 2, 13 S. W. 613; Krohn v. Heyn, 77 Tex. 318, 14 S. W. 130; Thornton v. Moody (Tex. Civ. App.) 24 S. W. 332; Shelton v. Lemmon (Tex. Civ. App.) 268 S. W. 178.

[7] This being a mining partnership, one partner has no authority to bind another partner. Adams v. Texhoma Oil & Refining Co. (Tex. Civ. App.) 262 S. W. 141. Ferguson not being bound by Reed's agreement because of the partnership, and because Reed expressly limited liability to himself, Fergu-

son was not bound unless some act of his estopped him from denying his participation in such contract.

The plaintiff not having pleaded estoppel, the effort to establish estoppel by part payment by Ferguson on the bill rendered for labor performed in the deepening of the well beyond the 3,600-foot depth was not admissible. Shelton v. Lemmon, supra, and authorities therein cited.

We therefore reverse the judgment of the trial court and remand this case to the county court for a new trial.