[No. 4487.]

FRANCIS O'FARREL *v.* MARY HARNEY.

| 51 | 125 |
|----|----|
| 77 | 78 |
| 51 | 125 |
| c80 | 80 |

CONFLICT BETWEEN THE MAP AND SURVEY OF A TOWN.—An official map of a town plat which, by reference to monuments established, or by some other mode, refers to a survey, is presumed to correctly represent the survey as actually made; but if there is a discrepancy between the map and the survey in the field, the survey must prevail, if the position of the points and lines established by the survey can be proved.

EVIDENCE OF BOUNDARY OF A LOT.—If the deed of a lot in a town, for a description of the lot, refers to the official map of the town plat, this reference does not prevent parol evidence from being received to show that the survey in the field from which the map was made conflicts with the map, for the purpose of arriving at the correct boundary of the lot.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

Ejectment to recover a belt of land fronting on Ann street, in the town of Washington, three and a half feet wide, and

extending back to the rear line of the lots fronting on said street. The defendant had judgment and the plaintiff appealed.

The other facts are stated in the opinion.

*Armstrong & Hinkson,* for the Appellant.

There is but one question in the case; it is this: Where is the east line of lot thirty, in block thirteen, in the town of Washington? To answer this question another question arises: Could the court resort to any other monuments than those mentioned in the *title* deeds? We claim that the court was bound by the calls of the title deed, and that as the title deeds called for the official map of the town of Washington for a description, that no evidence was admissible of any other monuments than those called for on the map. (*Murdock* v. *Chapman,* 9 Gray, 158; *Fore* v. *Vance,* 24 Cal. 444; *Seaward* v. *Malotte,* 15 Cal. 306; *Farris* v. *Coover,* 10 Cal. 622; *Noonan* v. *Lee,* 2 Black, 504; *Lunt* v. *Holland,* 14 Mass. 149; *Magourn* v. *Lapham,* 21 Pick. 135.)

*McCune & Welty,* for the Respondent.

The plaintiff seeks to adjust the town of Washington to a scale represented by a map, and to make the starting-point a particular stake set by the owner of the land long after the survey and location on the ground of all the blocks and streets.

This is not the true method of establishing the locality of the streets and lots.

The lots and blocks of the city are located as they were marked on the ground. These monuments control distance.

By the COURT:

The town of Washington was laid off and surveyed into lots, blocks and streets in the year 1850; an initial-point was established, stakes were set at the corners of the blocks, and a map was made, which was intended to represent the survey. The initial-point was subsequently lost, and in 1853 two iron bars were set at the northeast and southeast corners of block No. 3, in the place of the stakes which had

been set when the survey was made, and the bars still remain. In 1864 the county surveyor made a map of the town, which was a traced copy of the first map, and on it were represented the two iron bars at the corners of block No. 3, and the sizes of the lots and blocks and the width of the streets, and the map was adopted as the official map of the town.

Taylor, the owner of the property, conveyed to Moran, under whom the plaintiff claims title, a lot described as " all those certain lots of land situated in the town of Washington, Yolo County, and State of California, and known and described on the official map of Washington as lots * * * *; also lot No. 30 in block 13, said lot being twenty-six feet eight inches on Ann street, all of said property being in range 3." A deed was subsequently made by Taylor to the defendant, of lot No. 29, which lies immediately to the east of the lot conveyed to Moran. At the time when Taylor conveyed to Moran, the parties went upon the lot, and found in the ground, at the northwest corner of block No. 13, the decayed remains of the stake set there at the first survey, and thereupon Moran entered into possession of the lot. It is found that the distance from the northeast corner of block No. 3 to the east line of lot 30 in block 13, measuring along Ann street, according to the distances marked on the map, is nine hundred and thirty-three feet and four inches. The line found in that mode is three feet and six inches to the east of the eastern line of the lot ascertained by measuring twenty-six feet and eight inches—the width of the lot—from the point where the stake was placed at the first survey for the northwest corner of the block and lot.

The question is, where are the boundaries of the lot conveyed by Taylor to Moran? The map was intended as a representation of the survey actually made on the ground— the position of the blocks and lots as indicated by the lines as run and the stakes driven at the corners. A map which, by reference to monuments established, or by some other mode, refers to a survey, is presumed to correctly represent the survey as actually made; but if there is a discrepancy between the map and the survey, the survey must prevail,

if the position of the points and lines established by the survey can be proved. It must be so held, upon the principle that the monuments, whether natural or artificial, must prevail over the courses and distances. But it is urged that the official map does not mention a stake at the northwest corner of block 13, and that the admission of evidence showing that such stake had been set at the first survey, is in violation of the rule which prohibits the admission of parol evidence to vary, add to, or contradict a deed. The objection is not tenable. The map was intended, as has already been said, as a representation of the actual survey, and the evidence only proves the position of the lines as run—locates the calls mentioned in the map.

Judgment and order affirmed.