### WILSON et al. v. CHICAGO LUMBER & TIMBER CO. et al.

#### (Circuit Court, D. Colorado. March 28, 1904.)

#### No. 4,277.

1. DEEDS—CONSTRUCTION—REFERENCE TO MAP.

A deed to land in the town site of Denver, made pursuant to a decree of the probate judge, entered after hearing on the petition of the grantee, described the land by metes and bounds; making the old bed of the South Platte river, as shown on a map referred to therein, a part of the northwesterly boundary, and the extreme depth of the tract westerly from the street on which it fronted 125 feet, which was the depth claimed by the petitioner. At the time the map was made, it was difficult, if not impossible, to correctly locate the old bed of the river, which had been obliterated by floods. According to the scale of the map, it was shown to be 260 feet from the street at the nearest point where it would be reached by the boundary given, but the field notes of the survey on which the map was based showed it to be very near the street. *Held*, that it could not be presumed that the judge intended to grant more than the petitioner claimed, nor could the distances given in the description be ignored because of the reference to the river bed, the location of which was uncertain, and that the deed must be construed as conveying no land west of a line 125 feet from the street.

Action in Ejectment. On trial to the court.

R. H. Gilmore and John D. Fleming, for plaintiffs.
Elmer E. Whitted, for defendants.

HALLETT, District Judge. This is an action of ejectment to recover the possession of land in the city of Denver, the description of which will soon appear. Plaintiffs claim title under a deed issued by Henry A. Clough, probate judge of Arapahoe county, to Polinah S. Truax, of date September 17, 1872, pursuant to an act of Assembly approved February 8, 1872 (Ninth Session, p. 191). Polinah Truax made a petition to the probate judge of Arapahoe county, in which she declared that she held, under deed from Jacob Dowing, a former probate judge, of date 9th September, 1869, land described as follows:

"Beginning at a point 65 feet from the northwest corner of F and Williams Streets; thence along the west side of F street to Bassett street, 185 feet; thence westerly at right angles with F street 125 feet; thence southerly on a line parallel with F street 185 feet; thence easterly 125 feet to the place of beginning."

She then described certain improvements which she had made on the premises, and declared that she had occupied the same since January 1, 1872, in good faith and in ignorance of any adverse claim. She knew not why her title was challenged, and prayed for a deed to her

according to the terms of the aforesaid act of Assembly. Thereupon the probate judge directed that a hearing be had upon the petition on the 16th day of September, 1872. On the 17th of September the hearing before the court occurred, in which Polinah Truax appeared, and the city of Denver appeared by its attorney. After describing the tract claimed by the petitioner as given in her petition, with a frontage of 185 feet on F street and a depth of 125 feet, the court declared that Polinah Truax had acquired an interest in and to the following described piece of land—being a portion of that above described—in good faith, and without actual notice of the legal defects to the title thereof, and had located dwelling houses thereon prior to January 25, 1872, to wit: "Beginning at a point on the west line of F street in the East Division of the city of Denver in said county and territory, 106 feet north from the northwest corner of F and Williams streets; thence on the west line of F street 144 feet; thence at right angles with F street westerly to the east line of the old bed of the South Platte River, as the same is marked and defined on the map of the said city, as per survey of F. J. Ebert; thence southerly along the east line of the old bed of the South Platte River, 162 feet; thence in a direct line southerly and parallel with F street to a point 106 feet northerly from Williams street and 125 feet westerly from the westerly line of F street; thence at right angles and in a direct line easterly 125 feet to F street, to the place of beginning"—but that the said Polinah S. Truax did not obtain an interest in the remainder of the land, as first above described, in good faith, and without actual notice of the defects to the title thereof, improving the same by the erection of a dwelling or dwellings thereon. A deed was then issued by the probate judge for the land as described in the order, except that the course along the east line of the old bed of the South Platte river was given as 62 feet, instead of 162 feet, as mentioned in the order. This discrepancy between the order and the deed was not noticed by counsel in the course of the trial, and, in a plat of the premises put in by the plaintiffs, and marked "Exhibit C," this course was marked as of the length of 62 feet, so that it may be assumed that the length of the course as stated in the order was in fact erroneous.

The second course in the description of the premises conveyed in the deed extends westerly from F street to the east line of the old bed of the South Platte river, as the same is marked and defined on the map of said city, as per survey of F. J. Ebert, and plaintiffs maintain that this line is at a distance of more than 260 feet from the west line of F street. From this point of intersection, plaintiffs follow the line of the old bed of the South Platte river a distance of 62 feet, and there diverge in a southerly direction for a distance of 87 feet, which brings plaintiffs to a point 106 feet from the north line of Williams street, and 294 feet from the westerly line of F street. Thence the plaintiffs proceed to the place of beginning, 106 feet northerly from the intersection of Williams and F streets, and on the west line of F street.

It may be useful to observe that F street now is called "Fifteenth Street," and these terms are used interchangeably in the record. The course of this street is northwest and southeast, and the right-angle courses from F or Fifteenth street would be northeast and southwest.

The southwesterly line of the premises claimed by plaintiff is some-

what irregular as to about one-half, by the course of 62 feet along the line of the old bed of the South Platte river, but it may be said that the extension of territory embraced within the deed, according to plaintiffs' construction of the description over that called for in the description in the petition filed by Polinah Truax with the probate judge, is much greater than the original claim of Polinah Truax. Polinah Truax claimed a depth of 125 feet from F street in her petition to the probate judge. The depth now claimed by plaintiffs must be something over 160 feet, in addition to the 125 feet. I have not made the necessary calculation to ascertain the position of the southwesterly line upon an average of the entire width of the premises, but, as stated above, it must be somewhat beyond 160 feet.

We are now to consider whether the deed will admit of this construction in respect to the premises conveyed. It will be observed that Polinah Truax claimed title to no more than 125 feet in depth, and declared that she had a deed from an earlier probate judge for this quantity of land. The presumption is strong that the probate judge would give no more than was claimed by the petitioner.

Secondly, the probate judge declared that the land granted was a portion only of that described in the petition. If it be contended that this referred to the frontage on F street, which was reduced from 185 feet to 144 feet, did the probate judge intend to extend the lines in one direction, after restricting them in another, and so as to make the entire claim very much larger than that which Polinah Truax claimed in her petition?

Furthermore, plaintiffs reject a part of the description in the fourth course, in order to enlarge the territory claimed by them. This fourth course is "thence in a direct line southerly to a point 106 feet northerly from the north line of Williams street and 125 feet westerly from the westerly line of F street." Plaintiffs accept the point 106 feet northerly from the north line of Williams street, and cast out the part which declares that it shall be 125 feet westerly from the westerly line of F street, in order to put this point 169 feet further to the southwest. This they are not permitted to do if the description can be made effectual in any other way. The rule is that all calls in a deed must be followed if it be practicable to do so. If, now, we assume that the probate judge found the east line of the old bed of the South Platte river to be within 125 feet from the westerly line of F street, and within the territory described in the petition of Polinah Truax, as to the northwest corner thereof, we shall have no difficulty in giving effect to the calls of the description. This would bring the third course of the description along the east line of the old bed of the South Platte river, 62 feet within the premises claimed by Polinah Truax in her petition, and make the fourth course intelligible in going to a point 106 feet northerly from the north line of Williams street, and 125 feet westerly from the west line of F street. This accords with the judgment of the probate court, that less was given than Polinah Truax had asked in her petition. It was less in a southwesterly direction from F street, and less in the frontage upon F street.

In opposition to this view, plaintiffs contend that the reference to the map of the city of Denver, as per survey of F. J. Ebert, upon which

the line of the old bed of the South Platte river is traced at a distance of more than 260 feet from the westerly line of F street, shows the intention of the probate judge to convey all the lands claimed by them. The fact that the line of the old bed so appears is not disputed. The greater part of the testimony in the record is directed to the location of the old channel. When the Ebert map was made, in 1865, the line of this channel was not visible at the point in dispute. It had been obliterated by the flood which took place in Cherry creek and in Plum creek in the month of May, 1864, so that the actual location of the channel and the east line of the old bed of the South Platte river in the year 1865 must have been difficult, if not impracticable, to locate. Nevertheless Ebert made notes of the channel, which were given in evidence at the trial. These notes bring the channel very close to the line of F street, and they serve to explain in some measure the appearance of a small segment of land at the corner of Williams and F street, marked as "Block 5." It may be presumed that Ebert assumed that this small segment of land was all that would be available, outside the channel of the river, for town purposes. According to these notes of survey, the entire tract claimed by Polinah Truax in her petition to the probate judge was within the channel of the South Platte river. Whether the probate judge examined the field notes to ascertain the location of the old channel of the South Platte river, we do not know. To assume that he did so accords with his character for diligence and probity in the discharge of an official duty. The rule for which plaintiffs contend, that the line traced on the Ebert map and the distance of it from F street, as shown by the scale of that map, must be accepted as showing the western limit of the grant, is not reasonable, under the circumstances disclosed in the record. Clough was a public officer engaged in the discharge of a public duty. It is doubtful whether he could give more land to Truax than was called for in her petition. It is clear from the language used by him in the deed, and in the order upon which the deed was issued, that he did not intend to do so.

The rule for which plaintiffs contend, and to which counsel have cited many cases, is of large and wholesome application, where the parties to a conveyance intend to make a map or chart of the premises conveyed the best evidence of the extent of the grant. It is sometimes applied where a statute or a rule of practice has made the map or chart extraordinary evidence of the description of the land. Such was the case of Beaty v. Robertson, 130 Ind. 589, 30 N. E. 706. It has little application to a plat of a town, which is always open to correction from field notes or other competent evidence to show the true lines of survey. O'Farrel v. Harney, 51 Cal. 125; Whiting v. Gardner, 80 Cal. 79, 22 Pac. 71.

This controversy relates entirely to a tract of land west of that described in the petition of Polinah Truax to the probate judge, and between that tract and the bed of Cherry creek. As to that land, the court finds that Polinah Truax acquired no title from the deed by Clough to her, and therefore the plaintiffs have shown no title. Upon that, the judgment will be for defendants.